# EXHIBIT A



MICHAEL K. JEANES
Clerk of the Superior Court
By Jessica Kiraly, Deputy
Date 01/30/2013 Time 16:40:20
Description                    Amount
———— CASE# CV2013-001013 ——
CIVIL NEW COMPLAINT            301.00

TOTAL AMOUNT                   301.00
        Receipt# 22734827

1   Aaron M. Green, No. 019800
    LAW OFFICE OF AARON GREEN, P.C.
2   645 North Fourth Avenue, Suite B
    Phoenix, Arizona 85003-1595
3   Telephone: (602) 525-4659
    Fax: (602) 532-7457
4   greenlawaz@gmail.com
    *Attorney for the Plaintiff(s)*

5

6          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7              IN AND FOR THE COUNTY OF MARICOPA

8

9   NAVID ZAMANI and DONYA          )   Case No.: CV2013-001013
    ZAMANI, husband and wife,       )
10  Plaintiffs,                     )   **VERIFIED COMPLAINT**
                                    )
11  v.                              )
                                    )   (Fraud; TILA)
12                                  )
    BMO HARRIS BANK N.A., as legal  )
13  successor to M&I Marshall & Ilsley Bank, )
    a national banking association, )
14  Defendant.                      )

15

16

17      Plaintiffs Navid Zamani and Donya Zamani ("Plaintiffs"), by and through

18  undersigned counsel, for their complaint against Defendant, hereby allege the following:

19          **PARTIES, JURISDICTION & VENUE**

20      1. Plaintiffs are the borrowers on a Promissory Note owned by Defendant BMO

21  Harris Bank N.A., as legal successor to M & I Marshall & Ilsley Bank (the "Bank"),

22  which is secured by a Deed of Trust ("DOT") on the real property located at 5990 S. 99th

23  Ave., Tolleson, AZ 85353 (the "Subject Property") and (the "Promissory Note").  True

24

25

                                    1

Promissory Note from inception of the Promissory Note through August 2009.

12. Plaintiffs did not make the balloon payment required under the Promissory Note on September 1, 2009.

13. Upon information and belief, Plaintiffs continued to make payments on the Promissory Note in the amount of $1,675.57 from September 2009 through June 2010.

14. On or about June 8, 2010, Plaintiffs spoke with David Vasquez at M&I Bank to enter into a performance payment plan whereby three payments of $3,066.65 would be made over the following three months.

15. Mr. Vasquez told the Plaintiffs that if they made all three timely performance payments, M&I Bank would consider extending the Promissory Note's balloon payment for three additional years at six and one-quarter percent (6.25%) interest.

16. The performance payment plan was confirmed via written correspondence. A true and correct copy of the correspondence is attached as **Exhibit 3.**

17. Plaintiffs made all three timely payments of $3,066.65 under the performance payment plan.

18. Upon completion of the performance payments, on or around September 2010, M&I Bank and Plaintiffs entered into a modification of the Promissory Note via a Change In Terms Agreement. A true and correct copy of the Change In Terms Agreement is attached as **Exhibit 4**.

19. The Change In Terms Agreement states that the principal amount owed is

$502,670.00 and accrues interest at six and one-quarter percent (6.25%) interest with thirty-five (35) monthly payments of $3,095.03 and one balloon payment of $486,933.05 due September 1, 2012.

20. The Change In Terms Agreement was thereby executed by Plaintiffs in September 2010.

21. Although the Change In Terms Agreement was executed in September 2010, the Change In Terms Agreement provided by the Bank memorialized a date of September 2009.

22. Plaintiffs' reliance upon the execution date of the Change In Terms Agreement led Plaintiffs to anticipate that they would receive a loan modification for a three year extension from the date of executing the loan modification.

23. The Change In Terms Agreement also included a Disclosure Statement evidencing disclosures required by the Truth In Lending Act. A true and correct copy of the Disclosure Statement is attached as **Exhibit 5**.

24. The Disclosure Statement states that in addition to the balloon payment, Deferred Payments Due at Maturity would also be due in the amount of $34,976.52.

25. The Deferred Payments Due at Maturity failed to give Plaintiffs any credit for payments made between September 2009 and September 2010 (in the approximate amount of $24,280.98).

26. Upon information and belief, M&I Bank knew it failed to give Plaintiffs credit

for their payments made between September 2009 and September 2010, knew the amounts listed on the Change In Terms Agreement was false, misleading and material, and intended Plaintiffs not notice M&I Bank's misleading calculation of payments made.

27. In September of 2010, Plaintiffs were unaware that the Deferred Payments Due at Maturity listed on the Disclosure Statement was an actual charge, and justifiably relied on M&I Bank's representations listed in the APR given M&I Bank's sophistication in mortgage lending.

28. Upon information and belief, the Bank became the legal successor to M&I Bank prior to September 2012.

29. On or around October 2012, the Bank sent a Mortgage Delinquency Notice demanding payment of $43,799.45 which amount includes the Deferred Payments Due at Maturity. A true and correct copy of the Mortgage Delinquency Notice is attached as **Exhibit 6**.

30. As a direct and proximate result of the Bank's (as legal successor to M&I Bank) false amount included in the Disclosure Statement, Plaintiffs suffered injury.

### COUNT ONE
### (Fraud)

31. Plaintiffs reallege and incorporate by reference all previous allegations contained above as though fully set forth herein.

32. The Bank, as legal successor to M&I Bank, represented that the amount due on the Promissory Note and payable under the Change In Terms Agreement (the "Representation") was $502,670.00.

33. The Representation was false and misleading because the Bank also demanded additional monies claiming Plaintiffs were delinquent in past payments of $34,976.52 (the "False Delinquent Amount").

34. The Bank knew the False Delinquent Amount and Representation were untrue and material, yet it discreetly buried the payment required of the False Delinquent Amount at the bottom of the Disclosure Statement, failed to include the amount in the Finance Charge and failed to include it in the Change In Terms Agreement.

35. Because the Representation and False Delinquent Amount were not included in the Change In Terms Agreement and were not reflected in the Finance Charge of the Disclosure Statement, Plaintiffs were unable to recognize the Representation and False Delinquent Amount was payable.

36. The Bank intended the Plaintiffs to believe the Representation was true by failing to include the False Delinquent Amount in the Change In Terms Agreement and by not reflecting the amount in the Finance Charge of the Disclosure Statement.

37. The Plaintiffs justifiably relied upon the Bank's Representation.

38. As a direct and proximate result of the Bank's false Representation, Plaintiffs suffered injury.

WHEREFORE, Plaintiffs request that this Court enter Judgment against the Bank as follows:

       a. Awarding Plaintiffs damages in an amount to proven at trial;

       b. Awarding Plaintiffs punitive damages in an appropriate amount to punish the Bank for its malicious conduct;

       c. For such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT TWO
### (TILA)

39. Plaintiffs reallege and incorporate by reference all previous allegations contained above as though fully set forth herein.

40. The Bank, as legal successor to M&I Bank, had a duty to disclose the proper annual percentage rate and finance charge for the Promissory Note and Change In Terms Agreement.

41. The Bank demanded additional monies claiming Plaintiffs were delinquent in past payments of $34,976.52 (the "False Delinquent Amount").

42. The False Delinquent Amount was not disclosed in the Finance Charge, nor the Annual Percentage Rate.

43. As a direct and proximate result of the Bank's failure to properly disclose, Plaintiffs suffered injury.

WHEREFORE, Plaintiffs request that this Court enter Judgment against the Bank as follows:

       a. Awarding Plaintiffs damages in an amount to proven at trial;

       b. Awarding Plaintiffs twice the amount of any finance charge in connection with the Promissory Note and Change In Terms Agreement;

       c. For such other and further relief as this Court deems just and appropriate under the circumstances.

DATED this 30th day of January, 2013.

LAW OFFICE OF AARON GREEN, P.C.

Aaron M. Green
645 N. 4th Avenue, Suite B
Phoenix, Arizona 85003
*Attorney for Plaintiffs*

8

## VERIFICATION

1. I, Navid Zamani, am a Plaintiff in the foregoing action;

2. I have read the foregoing Verified Complaint and know the contents thereof;

3. The same are true of my own personal knowledge except as to those statements made upon information and belief, and as to those, I believe them to be true; and

4. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this __27__ day of January, 2013.

Navid Zamani

9

# VERIFICATION

1. I, Donya Zamani, am a Plaintiff in the foregoing action;

2. I have read the foregoing Verified Complaint and know the contents thereof;

3. The same are true of my own personal knowledge except as to those statements made upon information and belief, and as to those, I believe them to be true; and

4. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this _28_ day of January, 2013.


Donya Zamani

10

**EXHIBIT 1**

W.B.A. 458 (4/17/93)  MORTGAGE NOTE  9007744-0006189146  ZAMANI N

Wisconsin Banker Association 1993  (Do not use for a loan of $25,000 or less to individual(s) for personal, family, household or agricultural purposes unless the loan is secured by a first mortgage.  For use with fixed or variable rate.)  Boxes not checked are inapplicable.

Navid Zamani  and Donya M Zamani  August  9  2006  $  502,670.00
(Borrower)  (Date)

I promise to pay
to the order of  M&I Marshall and Ilsley Bank  , the principal sum of $  502,670.00  ("Lender")
at  770 North Water Street  Milwaukee, WI 53202

[Check (a), (b), (c); only one shall apply.]
☐ (a) in one payment on  September  1  2009  , plus interest payable as set forth below.
☐ (b) in ____ equal installments of $ ____ each thereafter ☐ every 14th day thereafter, PLUS a final
☐ the same day(s) of each month thereafter  payment of unpaid principal and accrued interest due on  ____ due on  , all subject to modification as set forth in (e)
below, if applicable.  All payments include principal and interest.
☐ (c) in ____ equal installments of principal of $ ____ due on
☐ the same day(s) of each  month thereafter ☐ every 7th day thereafter ☐ every 14th day
thereafter, PLUS a final payment of unpaid principal due on ____ , PLUS interest payable as set forth below.
Lender is under no obligation to refinance the final payment at maturity.

[Check (d) or (e);only one shall apply.]  This Note bears interest on the unpaid balance before maturity.
☒ (d) At the rate of  7.000  % per year.
☐ (e) At the annual rate which is equal to the following Index Rate, plus ____ percentage points ("Note Rate"), and the Note Rate shall be adjusted as provided below.  The Index Rate is:
☐ The average annual discount rate of the 26-week U.S. Treasury bills, as determined by the ____ section of the bills in the ____ month preceding this date and in the ____ months preceding each Change Date defined below, rounded up or down to the nearest ____ percentage point.
☐

The Initial Note Rate is ____ % per year.  The Note Rate will not exceed ____
The Note Rate will never be increased or decreased on any single Change Date defined below by more than ____ percentage points from the rate of interest in effect immediately prior to the Change Date.
The Note Rate shall be adjusted only on the following Change Dates: ☐ the first day of each month ☐ each scheduled payment date ☐ as and when the Index Rate changes ☐
Lender may decline to implement in full or in part any authorized increase in the Note Rate, and such increase declined by the Lender may thereafter be used either to offset any subsequent decrease in the Index Rate or to supplement any subsequent increase in the Index Rate on any Change Date.
An adjustment in the Note Rate will result in an increase or decrease in (1) ☐ the amount of each payment of interest, (2) ☐ the amount of the final payment, (3) ☐ the number of scheduled periodic payments sufficient to repay this Note in substantially equal payments, (4) ☐ the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date, or (5) ☐ the amount of each remaining payment of principal and interest (other than the final payment) so that those remaining payments with be substantially equal and sufficient to repay the Note by its scheduled maturity date based on the original amortization schedule used by Lender, plus the final payments of principal and interest.  I agree to pay any remaining payments or amounts.  If the Index Rate ceases to be available to Lender during the term of this Note, Lender may substitute a comparable index.

☐ (f) Interest is computed for the actual number of days principal is unpaid ☐ on the basis of a 360 day year ☐ on the basis of a 365 day year.
☒ (g) Interest is computed for the number of days principal is unpaid on the basis of a 360 day year, counting each day as one-thirtieth of a month and disregarding differences in lengths of calendar and actual years.
Interest is payable on  10/01/06  ____ and on ☒ the same day of each  consecutive  month thereafter ☐ every 7th day thereafter ☐ every 14th day thereafter, and at maturity, or, if box (b) is checked, at the times and rate ☒ which would otherwise be applicable plus ____ percentage points ☐or after maturity, whether occurring by acceleration or lapse of time, until paid, at the rate ☒ which would otherwise be applicable plus ____ percentage points.  If any payment is not made on or before the  15th  day after its due date, I may collect a delinquency charge of  5.00  % of the unpaid amount.  I agree to pay a charge of $ ____ for each check presented for payment under this Note which is returned unsatisfied.
This Note is secured by real estate under an agreement dated  August  9  2006  from  Navid Zamani and Donya M Zamani, husband and wife as community property with
right of survivorship  to Lender,
☐ This is a construction loan and interest is payable on the amounts advanced beginning ____ ,and on the same day of each month thereafter until ____
☐ I authorize Lender to automatically deduct payments due under this Note from account I will maintain with Lender.  I will keep sufficient funds in the account to pay the full amount of each payment on the date it is due.
This Note is subject to the following additional terms:
☒ Any installment paid within  30  days (but more than 30) prior to or after its due date is considered paid on the due date of the installment solely for purposes of determining default or delinquency charges.
☐ This Note renews and does not satisfy or discharge a Note I executed to Lender on ____
Full or partial prepayment of the Note ☒ is permitted at any time without penalty ☐

Upon prepayment in full, unearned interest will be refunded to the extent required by law.  Lender may apply prepayments to such future installments as it elects.
For Wisconsin residents only: I,  Navid Zamani  ,am ☒ married ☐ legally separated.  If I am
(Name)
married and my spouse is not signing below, the name of my spouse is ____ and my spouse resides at ☐ the address shown below or at ☐ ____
If I am a married Wisconsin resident, the obligation evidenced by this Note is being incurred in the interest of my marriage and family.

X ____

**VARIABLE RATE DISCLOSURES**
If box (e) above is checked, this Note contains a variable interest rate provision.  The following disclosures are applicable if this Note is secured by a first lien real estate mortgage or equivalent security interest on a owner-occupied one- to four-family dwelling used as your principal place of residence.  An increase or decrease in the Index Rate described above will cause a corresponding increase or decrease in the rate of interest.  The maximum Index Rate value is ____ %.  A copy of each ____ Note on whole or in part at any time without penalty.  Notice of any interest rate increase must be given to you.
I acknowledge receipt of a completed copy of this Note.  "I", "my" and "me" includes each person who signs this Note and our obligations are joint and several.  This Note includes the Additional Provisions on the reverse side.

| | | | |
|---|---|---|---|
| 6714 N 64th Place | Paradise Valley, AZ 85253 | X  Navid Zamani | (SEAL) |
| (Address) | | | |
| 6714 N 64th Place | Paradise Valley AZ 85253 | X  Donya M Zamani | (SEAL) |
| (Address) | | | |
| | | X | (SEAL) |
| (Address) | | | |

FOR LENDER'S CLERICAL USE
Guaranteed Unaffected on Affordable Rate Mortgages may be required ☐ Delivered  Disclosure Statement (W.B.A. (TL)-241 at 2402) may be required ☐ Delivered
Variable Rate purpose disclosures may be required ☐ Delivered  Amortization Note (W.B.A. (TL)-44 or AA) may be required ☐ Delivered
May use a W.B.A. rate late charge with this Note ☐  HUD form (W.B.A. (FORM)-AA-44AA) may be required ☐ Delivered
"If checked, their applicable prepayment conditions sold premises."

LOAN OFFICER

WBAMIO.PRM (12/99)

**ADDITIONAL PROVISIONS**

If I fail to make a payment under this Note when due, and the default continues for 10 days, or upon the occurrence of an event of default described in any agreement securing this Note, Lender may declare the entire balance of principal and accrued interest to be payable immediately, without notice or demand. All payments shall be applied in such manner as Lender determines to interest, principal and payments due under this Note or any agreement securing this Note. Unless a lien is prohibited by law or would render a nontaxable account taxable, I grant to Lender a security interest and lien in any deposit account I may at any time have with Lender. Lender may at any time after occurrence of an event of default, without notice or demand, set-off any amount unpaid on this Note against any deposit balance I may at any time have with Lender, or other money now or hereafter owed me by Lender. This Note is also secured by all existing and future security agreements covering personal property (other than a dwelling, unless disclosed on the reverse side) between Lender and any of us, between Lender and any guarantor or endorser of this Note, and between Lender and any other person providing collateral security for my obligations.

Presentment, protest, demand and notice of dishonor are waived. Without affecting my liability or the liability of any endorser, surety or guarantor, Lender may, without notice, grant renewals or extensions, accept partial payments, release or impair any collateral security for the payment of this Note or agree not to sue any party liable on it. I agree to pay all costs of collection before and after judgment, including, to the extent not prohibited by law, reasonable attorneys' fees.

I acknowledge that Lender has not made any representations or warranties with respect to, and that Lender does not assume any responsibility to me for, the collectability or enforceability of this Note or the financial condition of any of us. Each of us independently determined our creditworthiness and the enforceability of this Note.

This Note is intended by Lender and me as a final expression of this Note and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing. This Note benefits Lender, its successors and assigns, and binds me and my heirs, personal representatives and assigns.

**EXHIBIT 2**

Return To:
M&I Mortgage Corp.
ATTN: Final Documentation Dept.
P.O. Box 478
Milwaukee, WI 53201-0478

Prepared By:
Lorann TenHaken, Vice President
M&I Mortgage Corp.

—————————————[Space Above This Line For Recording Data]—————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   August          9    2005
together with all Riders to this document.
(B) "Borrower" is

Navid Zamani and Donya M Zamani, husband and wife as community property with
right of survivorship

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
6714 N 64th Place,                        Paradise Valley, AZ 85253
(C) "Lender" is M&I Marshall and Ilsley Bank

Lender is a   Corporation
organized and existing under the laws of the State of Wisconsin

3003 .TR01 (09/02)                          9807744-0004189146                        ZAMANI, N
ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3003  1/01 (rev. 6/02)

-6(AZ) (0206)
Page 1 of 15                    Initials: 

VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is     770 North Water Street
                             Milwaukee, WI 53202
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is

            Fidelity National Title Ins Co                    . Trustee's mailing address is

(E) "Note" means the promissory note signed by Borrower and dated August      9    2006
The Note states that Borrower owes Lender
Five Hundred Two Thousand Six Hundred Seventy and no/100                  Dollars
(U.S. $    502,670.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   September     1   2009
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider       ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

3003A.PRM (08/02)

@ -6(AZ) (0308)                             Page 2 of 15              Initials: _MC_ _D.T_    Form 3003   1/01 (rev. 8/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Maricopa

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

See Attached Legal Description

Parcel ID Number: 101-28-014A
8999 E 59th Avenue
Tolleson

MAIL: Tolleson AZ 85353
which currently has the address of
[Street]
[City], Arizona 85353 [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: [illegible]

Form 3002 1/01 (rev. 6/02)

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

ZAMAN, N

Initials: [illegible]

Form 3002 1/01 (rev. 6/02)

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

3002[.PRM (05/02)

-6(AZ) (0208)                                          Page 10 of 15            Initials ____            Form 3003  1/01 (rev. 6/02)

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

30032.FRM (08/02)                    9807744-0004189146                         ZAMANI, N

Initials: MC  DZ

-6(AZ) (0208)                          Page 11 of 16                      Form 3003  1/01 (rev. 8/02)

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicers and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

3002K.FRM (08/02)

(1996) -6(AZ) (0206)                    Page 12 of 18            Initials: ___ ___          Form 3003  1/01 (rev. 8/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

3003L.PRM (08/02)

-6(AZ) (0308)

9807744-0004189146

Page 15 of 16

Initials: Nt Da

ZAMANI, N

Form 3003   7/01 (rev. 6/02)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

| | |
|---|---|
| _____________________ | _____________________(Seal)<br>Navid Zamani -Borrower |
| _____________________ | _____________________(Seal)<br>Donya M Zamani -Borrower |
| _____________________(Seal)<br>-Borrower | _____________________(Seal)<br>-Borrower |
| _____________________(Seal)<br>-Borrower | _____________________(Seal)<br>-Borrower |
| _____________________(Seal)<br>-Borrower | _____________________(Seal)<br>-Borrower |

[illegible] (0005) 0007744-0004159146 ZAMANI, N

-6A(AZ) [illegible] Page [illegible] of [illegible] Form 3003 1/01 (rev. 6/05)

STATE OF ARIZONA, Maricopa County ss:

The foregoing instrument was acknowledged before me this August [illegible] 2006 by Navid Zamani Donya M Zamani

My Commission Expires:

_____________________
Notary Public

BARBARA TEL
Notary Public - Arizona
Maricopa County
Expires [illegible]

[illegible] (0005) 0007744-0004159146 ZAMANI, N

-6A(AZ) [illegible] Page [illegible] of [illegible] Initials: [illegible] Form 3003 1/01 (rev. 6/05)

**EXHIBIT 3**



M&I Marshall & Ilsley Bank
770 North Water Street
Milwaukee, WI 53202-3509
414-765-7700
mibank.com

NAVID ZAMANI
DONYA M ZAMANI
15 SHADOWCAST
NEWPORT COAST CA 92657

6-20%  3

Dear Mr. and Mrs. Zamani:

This letter is to confirm your telephone conversation with David Vasquez on 06/06/2010 in regard to a performance payment plan on Loan # 098-4189146-40000.

This plan is not a modification of your present loan terms. It is a plan which allows you to temporarily depart from the normal payment schedule required by your current loan documents, to prove your willingness and ability to make lower, more affordable monthly performance payments, if your loan is modified to new repayment terms.

Upon completion of your performance payment plan M&I Bank will modify your present loan terms, and mail you loan modification documents detailing the changes to the terms and conditions for your loan, provided that you fulfill the following condition:

(1) You make all of the required performance payments shown in the payment schedule below on, or before, the due dates indicated - a grace period is not allowed on performance payments; and

The following payments are required under this performance payment plan:

|  | Amount | Due Date | | |
|---|---|---|---|---|
| Payment #1 | $3066.65 | 07/01/2010 | ✓ | 8-1 4/1 |
| Payment #2 | $3066.65 | 08/01/2010 | ✓ | |
| Payment #3 | $3066.65 | 09/01/2010 | | 7/23 |

Performance payments should be made payable to M&I Bank, and mailed to:

M&I Marshall & Ilsley Bank
PO Box 2035
Attn: Loss Mitigation BRK-180-RC
Milwaukee, WI 53201-9919

Your performance payments will only total $9199.95 and will not fully repay your past due balance. Therefore, at the end of the performance payment plan your loan will continue to have a past due balance. If you complete this performance payment plan and your loan is modified, we will defer the past due balance; you must repay the past due balance no later than at payoff of your loan.

Please feel free to contact me at 414.302.6531 should you have any additional questions regarding this performance payment plan.

Sincerely,

Elisa Jimenez
MI Marshall Ilsley Bank

Nothing in this letter waives any rights or remedies available to M&I Bank, its affiliates or assigns. The terms and conditions under the documents applicable to your loan remain in full force until modified by written agreement.

200-DFN-C (11/06)

**EXHIBIT 4**

## CHANGE IN TERMS AGREEMENT

| Borrower: | Lender: |
|---|---|
| Donald Zentner | [illegible] NATIONAL BANK |
| Gladys M Zentner | North Phoenix |
| 15 SHADOWCOAST | 850 North 19th Avenue |
| NEWPORT COAST, CA  92657 | Phoenix, AZ  85009 |

**Principal Amount: $502,870.00**   **Date of Agreement: September 1, 2009**

DESCRIPTION OF EXISTING INDEBTEDNESS. [illegible text]

DESCRIPTION OF COLLATERAL. [illegible text]

DESCRIPTION OF CHANGE IN TERMS. [illegible text]

PAYMENT. [illegible text]

INTEREST CALCULATION METHOD. [illegible text]

CONTINUING VALIDITY. [illegible text]

ESCROW PAYMENTS. [illegible text]

CREDIT INSURANCE. [illegible text]

UNPAID INTEREST AND FEES. [illegible text]

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____   X _____
Donald Zentner                      Gladys M Zentner

COPY

**EXHIBIT 5**

10/01/2012 15:28 FAX 4804972005          Gilbert Family Dentistry                    ☑019

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $502,670.00 | 09-01-2009 | 09-01-2012 | 4189136-40000 | ***** | 000018-87361 | 9398 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Navid Zamani
Donya M Zamani
15 SHADOWCAST
NEWPORT COAST, CA 92657

**Lender:** M&I MARSHALL & ILSLEY BANK
North Phoenix
650 North 19th Avenue
Phoenix, AZ 85068

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 6.250% | $92,589.10 | $502,670.00 | $595,259.10 |

**PAYMENT SCHEDULE.** My payment schedule will be 35 monthly payments of $3,098.03 each, beginning October 1, 2009; and one payment of $486,933.05 on September 1, 2012.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in property located at 5990 S 99TH AVENUE, TOLLESON, AZ 85353. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts. In addition, collateral securing other loans with Lender may also secure this loan.

**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on September 1, 2009, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X _____
   Donya M Zamani

## Amount Financed Itemization

| | |
|---|---|
| Amount paid to me directly: | $502,670.00 |
| $502,670.00 Deposited to Account # | |
| Note Principal: | $502,670.00 |
| Prepaid Finance Charges: | $0.00 |
| Amount Financed: | $502,670.00 |
| Other Charges Paid in Cash: | $34,976.52 |
| $34,976.52 DEFERRED PAYMENTS DUE AT MATURITY | |

LASER PRO Lending, Ver. 5.51.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2010.  All Rights Reserved.  - AZ  P:\PFS\CFI\LPL\D20.FC  TR-18727  PR-105

COPY

**EXHIBIT 6**



BMO HARRIS BANK N.A. - CLC SERVICING DEPT. D
P.O. BOX 5042
ROLLING MEADOWS, IL 60008

**Mortgage Delinquency Notice**

Loan Number:       9500355906

Statement Date:    11-2-2012

* 0401221  000000945 09NB54  0430298
Navid Zamani
Donya M Zamani
12630 E Kalil
Scottsdale AZ 85259-3408

Customer Service:
(800) 207-3058
Hours: Monday through Friday,
8:00 a.m. to 6:00 p.m. CST

## Mortgage Payment Delinquency Notice

| Due Date | Regular Payment | Late Charge | Uncollected Late Charge | Miscellaneous Fees | Total Amount Due |
|---|---|---|---|---|---|
| 10-1-2012 | $ 6,190.05 | $ 439.83 | $ 0.00 | $ 37,169.55 | $ 43,799.45 |

Our records indicate that your mortgage payment is more than 30 days past due. If this information is incorrect, please contact our Mortgage Servicing Unit at (800) 207-3058. Otherwise, kindly remit the Total Amount Due as indicated above.

If you need to make payment arrangements, please contact our Mortgage Collections Division at (847) 434-2501.

If you would like information on Homeownership Counseling, please call HUD's Housing Counseling Agency at (800) 569-4287.

Credit Information: We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

Please remit delinquent payments to the address listed below:

**BMO HARRIS BANK N.A. - CLC SERVICING DEPT. C**
**P.O. BOX 5042**
**ROLLING MEADOWS, IL 60008**

XB436-00A

*Please detach and enclose bottom portion with check or money order made payable to BMO Harris Bank N.A.*

## MORTGAGE DELINQUENCY PAYMENT NOTICE

**LOAN NUMBER: 9500355906**
**DATE: 11-2-2012**

BMO HARRIS BANK N.A,
CLC SERVICING DEPT. D
P.O. BOX 5042
ROLLING MEADOWS, IL 60008

Make checks payable to: BMO Harris Bank N.A.

☐ Check if your address/telephone number
has changed and fill out form on reverse side

Navid Zamani
Donya M Zamani
12630 E Kalil
Scottsdale AZ 85259-3408

BMO HARRIS BANK N.A. - CLC SERVICING DEPT. C
P.O. BOX 5042
ROLLING MEADOWS, IL 60008-5042

If remitting more than total amount due, please complete the section below:

| Total Amount Due | + Additional Principal | = Total Amount Enclosed |
|---|---|---|
| $ 43,799.45 | | |

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| NAVID ZAMANI AND DONYA ZAMANI, HUSBAND AND WIFE | Hearing Date: |
| | CASE NO: CV2013-001013 |
| Plaintiff/Petitioner | DECLARATION OF SERVICE OF: SUMMONS; COMPLAINT; CERTIFICATE COMPULSORY ARBITRATION |
| vs. | |
| BMO HARRIS BANK, N.A., as legal successor to M&I Marshall & Isley Bank, a national banking association | **FILED** |
| Defendant/Respondent | **BY B. COLWELL, DEP** |

13 MAR -5 PM 3: 08
RECEIVED NE LOBBY
DOCUMENT DEPOSITORY
MICHAEL M. JEANES, CLERK
BY                        DEP

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **27th day of February, 2013**, at **1:32 PM**, at the address of **ONE CAMELBACK Road, PHOENIX, AZ 85012**; this declarant served the above described documents upon **BMO HARRIS BANK, N.A.** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Carmenza Campbell Service Rep., PERSON AUTHORIZED TO ACCEPT, An Hispanic female approx. 45-55 years of age, 5'4"-5'8" tall, weighing 80-120 lbs with black hair..**

No Information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Declarant hereby states under penalty of perjury under the laws of the State of Arizona that the statement above is true and correct.

DATED this 28th day of February, 2013.

Christopher Chevalier, Reg. # 8192, Maricopa, AZ

1001 North Third Avenue, Suite 7, Phoenix, AZ 85003, 602-253-4563

FOR: Green, Aaron P.C.
REF: Zamani

ORIGINAL PROOF OF SERVICE

Tracking #: **7373069** PHX FIL

# EXHIBIT C

1   Barbara J. Dawson (#012104)
2   Daniel W. Huitink (#026276)
    **SNELL & WILMER** L.L.P.
    One Arizona Center
3   400 E. Van Buren
    Phoenix, AZ 85004-2202
4   Telephone: (602) 382-6000
    bdawson@swlaw.com
5   dhuitink@swlaw.com
    Attorneys for Defendant BMO Harris Bank, N.A., as
6   successor by merger to M&I Marshall & Ilsley Bank

7            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8               **IN AND FOR THE COUNTY OF MARICOPA**

9
    NAVID ZAMANI and DONYA                    Case No. CV2013-001013
10  ZAMANI, husband and wife,
                                              **NOTICE OF REMOVAL**
11                  Plaintiffs,
                                              (Assigned to the Hon. Mark Brain)
12  v.

13  BMO HARRIS BANK, N.A., as legal
    successor to M&I Marshall & Ilsley
14  Bank, a national banking association,

15                  Defendant.

16

17  **TO:   THE CLERK OF THE SUPERIOR COURT AND ALL PARTIES HERETO
           AND THEIR ATTORNEYS**
18

19          Defendant BMO Harris Bank, N.A., as legal successor to M&I Marshall & Ilsley

20  Bank, a national banking association, gives notice of removal of this action from the

21  Maricopa County Superior Court to the United States District Court for the District of

22  Arizona.  A copy of the Notice of Removal filed with the United States District Court for

23  the District of Arizona is attached as Exhibit A.  Pursuant to 28 U.S.C. § 1446(d), this

24  Court shall proceed no further with this action.

25

26

27

28

1    DATED this 29th day of March, 2013.

2                                        SNELL & WILMER L.L.P.

3

4                          By    /s/ Daniel W. Huitink
                                Barbara J. Dawson
5                               Daniel W. Huitink
                                One Arizona Center
6                               400 E. Van Buren
                                Phoenix, AZ  85004-2202
7                               Attorneys for Defendant BMO Harris Bank, N.A., as
                                successor by merger to M&I Marshall & Ilsley Bank
8

9    **ORIGINAL** of the foregoing
     e-filed this 29th day of
     March, 2013 with the Clerk
10   of the Court.

11   **COPY** mailed to:

12   Aaron M. Green, Esq.
     Law Office of Aaron Green, P.C.
13   645 North Fourth Avenue, Suite B
     Phoenix, AZ 85003-1595
14   (602) 525-4659
     Attorney for Plaintiffs
15

16

17   /s/ Beth Scott
     16888548

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   Barbara J. Dawson (#012104)
    Daniel W. Huitink (#026276)
2   **SNELL & WILMER** L.L.P.
    One Arizona Center
3   400 E. Van Buren
    Phoenix, AZ  85004-2202
4   Telephone: (602) 382-6000
    bdawson@swlaw.com
5   dhuitink@swlaw.com
    Attorneys for Defendant BMO Harris Bank, N.A.
6

7           **IN THE UNITED STATES DISTRICT COURT**

8               **FOR THE DISTRICT OF ARIZONA**

9

10   Navid Zamani and Donya Zamani,       Case No.
    husband and wife,
11                     **NOTICE OF REMOVAL**
            Plaintiffs,
12
    v.
13
    BMO Harris Bank, N.A., as legal
14   successor to M&I Marshall & Ilsley
    Bank,
15
            Defendant.
16

17   **TO:**   **TO THE HONORABLE JUDGES AND CLERK OF THE ABOVE-
18         ENTITLED COURT**

19       **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1441 and 1446,

20   Defendant BMO Harris Bank, N.A., as legal successor by merger to M&I Marshall &

21   Ilsley Bank ("BMO"), files this Notice of Removal of the state court civil action filed

22   against it that is described below.  The grounds for removal are the following:

23         1.     Plaintiffs Navid Zamani and Donya Zamani, with the filing of the

24   Complaint, commenced this action in the Superior Court of the State of Arizona in and for

25   the County of Maricopa on January 30, 2013, in Case Number CV2013-001013 (the

26   "Superior Court Action").  *See* Exhibit A.

27         2.     On February 27, 2013, BMO was served with copies of the Summons and

28   Complaint.  *See* Exhibit B.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
(602) 382-6000

1       3.    Removal is timely under 28 U.S.C. § 1446(b), because this Notice is filed

2   within 30 days after receipt by BMO of the Complaint, and within one year of the

3   commencement of the action.

4       4.    Under 28 U.S.C. § 1441, this Court is the appropriate forum in which to file

5   this Notice of Removal because the United States District Court for the District of

6   Arizona, Phoenix Division, is the federal judicial district embracing Maricopa County,

7   Arizona, the county in which the Superior Court Action was filed.

8       5.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C.

9   § 1331, and this matter is one which may be removed to this Court pursuant to 28 U.S.C.

10  § 1441(b), because it is a civil action whereby the Plaintiffs brought claims under the

11  Truth in Lending Act ("TILA") of 1968, 15 U.S.C. § 1601 *et seq. See* Exhibit A at ¶¶ 40-

12  43.

13      6.    The Court further has supplemental jurisdiction over the remaining claims in

14  the Complaint because those claims are so related to the claims arising under the Court's

15  original jurisdiction "that they form part of the same case or controversy under Article III

16  of the U.S. Constitution." 28 U.S.C. § 1367.

17      7.    By removing this action, BMO does not waive any defense that may be

18  available to it.

19      8.    Pursuant to 28 U.S.C. § 1446 and LRCiv 3.7(a), counsel for BMO has

20  caused a copy of this Notice of Removal to be filed in the Superior Court Action. *See*

21  Exhibit C.

22      9.    Copies of all other documents filed in the Superior Court are attached as

23  Exhibit D.

24      WHEREFORE, BMO respectfully requests that this Notice of Removal be filed,

25  the Superior Court Action be removed to and proceed hereafter in this Court, and no

26  further proceedings be had in the Superior Court of Maricopa County, Arizona.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

DATED this 29th day of March, 2013.

SNELL & WILMER L.L.P.


By  *s/ Daniel W. Huitink*
Barbara J. Dawson
Daniel W. Huitink
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Attorneys for Defendant BMO Harris Bank, N.A. as
successor by merger to M&I Marshall & Ilsley Bank

- 3 -

1

### CERTIFICATE OF SERVICE

2     I hereby certify that on the 29th day of March, 2013, I electronically transmitted the
3 foregoing document and any attachments to the U.S. District Court Clerk's Office using
the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the
following CM/ECF registrants.

4
5     I further certify that on March 29, 2013, I served the attached document by mail on
the following:

6                          Aaron M. Green, Esq.
                      Law Offices of Aaron Green, P.C.
7                     645 North Fourth Avenue, Ste. B.
                          Phoenix, AZ 85003-1595
8                           Attorney for Plaintiffs

9

10    *s/ Beth Scott*

11    16888540

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1920
Phoenix, Arizona 85004-2202
602.382.6000

- 4 -

# EXHIBIT D

MAR 5 2013   FILED 3:08 P.M.

MICHAEL K. JEANES, Clerk

By _B. Colwell_
B. Colwell, Deputy

1 | Aaron M. Green, No. 019800
LAW OFFICE OF AARON GREEN, P.C.
2 | 645 North Fourth Avenue, Suite B
Phoenix, Arizona 85003-1595
3 | Telephone: (602) 525-4659
Fax: (602) 532-7457
4 | greenlawaz@gmail.com
_Attorney for the Plaintiff(s)_

5

**ORIGINAL**

6 | **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

7 | **IN AND FOR THE COUNTY OF MARICOPA**

8

9 | NAVID ZAMANI and DONYA         ) Case No.: **CV2013-001013**
ZAMANI, husband and wife,       )
10 | Plaintiffs,                    )         **SUMMONS**
                                   )
11 | v.                             )
                                   )
12 | BMO HARRIS BANK N.A., as legal ) If you would like legal advice from a lawyer,
13 | successor to M&I Marshall & Ilsley Bank, ) contact the Lawyer Referral Service at
a national banking association, )
14 | Defendant.                     )         **602-257-4434**
                                   )              or
15 |                                        **www.lawyerfinders.org.**

                                         Sponsored by the
16                                       Maricopa County Bar Association

17 | THE STATE OF ARIZONA TO THE DEFENDANT:

18 | **BMO HARRIS BANK N.A.**

19 | **YOU ARE HEREBY SUMMONED** and required to appear and defend, within
the time applicable, in this action in this Court. If served within Arizona, you shall
20 | appear and defend within 20 days after the service of the Summons and Complaint upon
you, exclusive of the day of service. If served out of the State of Arizona – whether by
21 | direct service, by registered or certified mail, or by publication – you shall appear and
22 | defend within 30 days after the service of the Summons and Complaint upon you is
complete, exclusive of the day of service. Where process is served upon the Arizona
23 | Director of Insurance as an insurer's attorney to receive service of legal process against it
in this state, the insurer shall not be required to appear, answer or plead until expiration of
24 | 40 days after date of such service upon the Director. Service by registered or certified
25 | mail without the State of Arizona is complete 30 days after the date of filing the receipt
and affidavit of service with the Court. Service by publication is complete 30 days after

1

the date of first publication.  Direct service is complete when made.  Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return.  **RCP 4; ARS §§ 20-222, 28-502, 28-503.**

 **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

 **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiffs' attorney.  **RCP 10(d); ARS § 12-311; RCP 5.**

 Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.

The name and address of plaintiffs' attorneys is:

  Aaron M. Green
  Law Office of Aaron Green, P.C.
  645 N. 4th Ave., Suite B
  Phoenix, AZ 85003

SIGNED AND SEALED this date:   JAN 3 0 2013   **MICHAEL K. JEANES, CLERK**

**MICHAEL K. JEANES, Clerk of the Court**

J. Kiraly
~~Deputy Clerk~~

Deputy Clerk

2

MICHAEL K. JEANES, CLERK
BY [signature] DEP
FILED
13 JAN 30  PM 4: 40

1  Aaron M. Green, No. 019800
   LAW OFFICE OF AARON GREEN, P.C.
2  645 North Fourth Avenue, Suite B
   Phoenix, Arizona 85003-1595
3  Telephone: (602) 525-4659
   Fax: (602) 532-7457
4  greenlawaz@gmail.com
   *Attorney for the Plaintiff(s)*
5

6          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7             IN AND FOR THE COUNTY OF MARICOPA

8

9   NAVID ZAMANI and DONYA          )  Case No.: **CV2013-001013**
    ZAMANI, husband and wife,       )
10  Plaintiffs,                     )  **CERTIFICATE REGARDING**
                                    )  **COMPULSORY ARBITRATION**
11                                  )
    v.                              )
12                                  )
    BMO HARRIS BANK N.A., as legal  )
13  successor to M&I Marshall & Ilsley Bank, )
    a national banking association, )
14  Defendant.                      )
                                    )
15  _____

16         Pursuant to Rule 72, Arizona Rules of Civil Procedure, the undersigned certifies

17  that he knows the dollar limits and any other limitations set forth by the local rules of

18  practice for the Maricopa County Superior Court, and further certifies that this case **is**

19  **not**/ subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona
20
    Rules of Civil Procedure.
21

22  /     /     /

23

24  /     /     /

25

                                    1

RESPECTFULLY SUBMITTED this 30th day of January, 2013.

LAW OFFICE OF AARON GREEN, P.C.

Aaron M. Green
645 N. 4th Avenue, Suite B
Phoenix, Arizona 85003
*Attorney for Plaintiffs*

2